You may proceed. Good morning, Your Honors, and may it please the Court, my name is Viridiana Aceves, and I, along with my co-counsel, Immanuel Hassan, are certified law students under the supervision of Andrew Knapp, and we will be arguing on behalf of Petitioner Mr. Candido Gonzalez Dominguez. At this time, I would like to request two minutes for rebuttal. All right. Watch your clock, ma'am. Watch your clock. It goes down. Yes, Your Honor. Thank you. The dispositive issue before this Court is whether the transportation subsection of Arizona's dangerous drug statute is indivisible. This Court should find that it is and vacate the holding of the BIA or remand of appropriate for the following reasons. First, the actions delineated within the statute are simply different methods of commission. And second, the drug identity is not an element of the subsection. I will address the first point while my co-counsel will address the second. In regards to divisibility by action, the only way that transportation for sale can be treated as a separate and distinct crime is if it was also further divisible by transportation via importation. Under Arizona law, as exemplified by State v. Kirchner, there are two ways to commit transportation of dangerous drugs. The first is by transportation for sale and the second is via importation. In other words, if we accept the government's premise that transportation for sale is a separate and distinct crime, then we must also treat transportation for sale as separate from the very act that Arizona courts have already used to prove up transportation for sale. But they're already agreeing about it being overly broad, right? So do we need to go into that? No, Your Honor. However, importation is relevant because Arizona courts use or allow the government to prove transportation for sale via importation. And so if we treat transportation for sale as a separate and distinct crime, then essentially what would happen is that Arizona courts will treat transportation for sale or the subsection as divisible when it is violated by one type of action, such as transportation for sale, but indivisible when it is violated by another type of action. But I think you're giving short shrift to Arizona law because you've got the Supreme Court case in Arizona, State v. Sharmi, and the relevant pattern jury instruction makes clear that each component of the law is a disjunctive element, meaning that the statute is divisible. That's a little elephant in the room that's some trouble for you. Yes, Your Honor. State v. Sharmi is a Supreme Court decision that used to phrase elements of transportation. However, the key distinction between State v. Sharmi is that it was decided by the charging documents test. And we know this because State v. Bradley explained this. And so what happens under the charging documents test is that courts will look at a lesser included offense and see if it was mentioned in the charging document, even though it might not always be a constituent part of the greater offense. And State v. Bradley tells us that when this happens, possession of a dangerous drug is not always a lesser included offense of transportation for sale. And in fact, when we use the elements test, which is the second test used in Arizona courts to determine a lesser included offense, we have a completely opposite result. Under the elements test, courts will consider whether the lesser included offense is always a constituent part of the greater offense. And so looking at the entire subsection as a whole, State v. Bradley found that possession of a dangerous drug is not, in fact, always a lesser included offense of transportation for sale. And so what happens is that because Taylor demands this level of certainty in order to apply the modified categorical approach, and State v. Bradley tells us that possession of a dangerous drug is not always a lesser included offense, that demand for certainty is not established in this case. Furthermore, State v. Bradley analysis is corroborated by the application of state law in Arizona. Arizona punishes four types of drugs, marijuana, prescription drugs, dangerous drugs, and narcotic drugs. And within the context of narcotic drugs, State v. Brown found that sale and transfer are one single offense. And in that case, the court emphasized that sale and transfer are essentially one single offense, and therefore, it could not be charged in multiple counts. Because Arizona courts have already found in a similarly worded statute that sale and transfer are one single offense, this court should also recognize that it is most likely that Arizona would find that transportation for sale is not a separate and distinct crime from the remaining actions delineated within the statute. Furthermore, the jury instructions also suggest that the subsection is also indivisible. Under Arizona law, there are two jury instructions, one specifically for offering to transport, offering to import, offer to sell, and the second for transportation, importation, transfer, and sale. And so what's interesting about these jury instructions is that both of them list in brackets the actions delineated within the statute. And in fact, they have this provision in the jury instructions that says that allows prosecutors to only use the actions that are applicable to the case, which means that prosecutors can have the flexibility to amend the instructions depending on the theory of the case. If, for example, they were only accusing the defendant of sale, then they could only include sale in the jury instructions. But if they had two theories of the case that included both transportation, for example, or transfer, then they can include both of them in the jury instructions. And so this suggests that if they're allowed to only name one specific statute or if they're allowed to include both of the actions, then the subsection must be indivisible. Why don't you go back and jump to the very front end and tell me why you don't think that he waived his argument first and foremost before we jump into the divisibility, okay? Your Honor, if I understand correctly, the government's position on that is that they were addressing the argument of divisibility by the identity of the drug. And so that argument was presented in the footnote in the original brief that Candido submitted to the BIA. And so because of that, the BIA was sufficiently on notice. And my co-counsel will further discuss the details of that. That's why you didn't address it. Okay. Go ahead. Your Honor, in addition, the fact that there's case law on the jury instructions that suggests that Arizona prosecutors are allowed to amend, but they're also allowed to charge the entire statute as a whole or in the disjunctive. And this was the case in Diaz-Perez versus Holder. And this court has already stated in Ramirez versus Lynch that when the prosecutor may allege in the entirety without seeking a unanimous jury verdict on one particular prong must be considered indivisible. And so here the jury instructions are able to be charged as a whole and in the disjunctive. And so this further suggests that the Arizona legislature must have intended to create one single offense and not treat transportation for sale as a separate and distinct crime. You also make the argument that the drug itself, because there's several different drugs. Yes, Your Honor. Are you familiar with, there's a Ninth Circuit case that went on bonk. We haven't filed an opinion yet, but it's called Martinez-Lopez, U.S. v. Martinez-Lopez that deals with the same issue on a California statute. Are you familiar with that case? Yes, Your Honor. So wouldn't it make sense on that argument for us to wait to see what the Ninth Circuit says on that? You could, Your Honor. However, that case is not likely to determine the divisibility by drug type because there's a significant distinction between California powder jury instructions and Arizona jury instructions. And it has to do more with the elements rather than just the drug type, right? Correct, Your Honor. In addition, California allows prosecutor or has a blank space that prosecutors can fill in the name of the drug, whereas Arizona powder jury instructions, at least for its dangerous drug statute, do not have that option. However, in addition, Martinez-Lopez would clarify the divisibility analysis under Memphis v. United States. So in that regard, this court could wait. However, it is unlikely that it will resolve the issue of divisibility by drug type. So the technique that they use in getting there might be helpful, but the statutes are distinct in regards. But we'd have an en banc panel looking at it, right? Correct, Your Honor. And I see my time is almost running out, so I'd like to reserve the remaining time for my co-counsel. All right. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the court. My name is Iman El-Hassan, and I represent the petitioner, Candido. I will argue that specific drug identity is not an element of Candido's conviction because 133407A7 is not divisible by drug type. Your Honors, the government already agrees that 133407A7 is overbroad and even identifies scopolamine as being included on Arizona's list of dangerous drugs, but not on the federal drug schedules. And COT or something like that, right? Scopolamine and something else, right? Perhaps cat marijuana. Oh, cat. Does that count? Yes, Your Honor. So overbreadth is not at issue. It is only divisibility that is at issue. And as — Well, I'm a little bit perplexed in that on the argument of the — whether the drug itself is an element or it's an alternate means of committing the crime. Because that — admittedly, I was a prosecutor in California, but say if you're charging all of it and then you get up to that it's methamphetamine, all right? If you don't — if you did not call a witness to say that the drug in question was methamphetamine and present some sort of evidence that it qualified as whatever schedule was involved or if there wasn't a stipulation and you rested your case, at the end of it, the defense would jump up and say that the prosecutor has put on no evidence of the element of the drug. And therefore — and what the court would say is, oops, you're right. And so the defendant gets a not guilty right there as a matter of law for insufficiency of the evidence. So if that's how it works, if you don't — how can it not be an element? Well, Your Honor, you are correct that the prosecution does have to put on evidence that a dangerous drug was present because a dangerous drug is an element of the statute. And a common means of accomplishing that and of satisfying the dangerous drug element is by showing that a specific drug was there and by showing that specific drug identity. However, that is not a necessary means. And we know that by looking to the Arizona Pattern Jury Instructions, as my co-counsel mentioned. For example, the Arizona Pattern Jury Instructions for a conviction under 13-3407-A-7 lists all of the elements of the statute, including the general term, dangerous drug. However — Okay, so if you don't put on any evidence, then the other side could argue, well, it was just powder. It was baby powder. So, I mean, it's an element to show it's a dangerous drug. Respectfully, no, Your Honor. While the prosecution — a jury is allowed to be split as to the specific identity of the drug so long as a jury unanimously agrees that some dangerous drug was there. For example — But the problem there is with the list of dangerous drugs, you have a couple that are not. Isn't that the issue there? Yes, Your Honor. And that is why the statute is overbroad. That's the issue. So, even if the jury were instructed, you must find that a dangerous drug — and you don't need to determine the exact kind — you have this issue with the list of dangerous drugs having a couple that don't fit the statute, right? Precisely, Your Honor. And that is exactly why 13-3407-A-7 is not a categorical match for its federal counterpart. Moreover, Your Honors, we can look to State v. Prescott, where the court held that it is clear from the statutes that possession or sale of a dangerous drug is one crime, regardless of whether the drug possessed or sold is methamphetamine, MDMA, or any other substance that the statute defines as a dangerous drug. And this alludes to the idea that the jury is able to be split as to the specific identity of the drug, making it merely a means and not an element of satisfying the statute. And while State v. Prescott is unpublished, we do not look to it for its binding authority or its precedential value, but rather we look to it to see common practices of Arizona prosecutions. Whether it's reasonable and not just a hypothetical made up, that it could be applied in such a way. That it's actually applied in such a way. Your Honor, I'm sorry, I don't understand. You're arguing that even though it's not a published decision, this case shows us how Arizona courts do it or view it. Yes, Your Honor. It exemplifies how Arizona... Because we don't have a lot of Arizona law on this at all. We don't, Your Honor. Yeah. So we have to go with what we've got. Yes, Your Honor. There are no Arizona Supreme Court decisions that address this head on, that address the divisibility issue head on. However, we can look to the Arizona pattern jury instructions. And as my co-counsel mentioned, they are in stark contrast from the California pattern jury instructions for the similar or equivalent drug statute, where in California they leave that blank open so that the prosecutor can write in the specific drug identity. Arizona does not do that. Meaning that in Arizona, the prosecution does not need to prove beyond a reasonable doubt that the specific drug identity was present, just that a dangerous drug was present. Your Honors, I'd like to reserve the remainder of my time for about a minute. All right. Thank you, counsel. You don't really have any more time, but if you have something else you want to say, I'll give you a minute at the end. Okay. Thank you, Your Honors. Good morning, Your Honors. May it please the Court to stride and strand on behalf of the government. If I could jump right into the divisibility by Actus Re. We have acknowledged with regard to your question, Your Honor, we have acknowledged that the statute is over broad, is over broad, but that doesn't answer the full question. Divisibility. It's just the first part of the analysis.   First of all, we're talking about the divisibility. It's about conspiracy. You're arguing that's categorically a match. Yes. And this Court has already held in Garcia-Santana that Arizona is an example of the type of conspiracy statute that meets the generic definition. Right. Right. So then you move to 13-3407-A-7, which has the Actus Re, the four Actus Re plus offer to. So you're arguing that these are elements, not, and that a jury is required to reach unanimity as to what exactly, which exactly of the elements. And do you have cases that show that? Yes, Your Honor. Cherami, which Judge Campbell's question alluded to, specifically held that 13-3407-A creates, quote, a transportation for sale offense, which contains specific elements of transporting for sale a dangerous drug. Our opponent would have this Court believe that Cherami did not know what it was saying when it used the term elements to describe the elements of that offense. But Cherami, in fact, used elements in exactly the way that Mathis instructs. Cherami said that the elements mean what the state must prove. Mathis said elements are the things the prosecution must prove to sustain a conviction. So we have a state supreme en banc court telling us explicitly that transportation for sale is a distinct offense under 13-3407-A-7. Right. But Cherami was decided in 2008, and Mathis was decided in 2016. And I think the combination of discounts and Mathis, and I think there's Rendon in our circuit, has put a new meaning to the word element. And the question is, did it mean the same thing? And did the Arizona Supreme Court intend to mean it in the same way as the U.S. Supreme Court looked at it, starting with the series of decisions that Justice Kagan has been writing for us? That's why I quoted Cherami. Cherami explained what it meant by elements. It said elements are what the state must prove. And Cherami said elements are the things the prosecution must prove to sustain a conviction. And the jury must be unanimous on this. It requires jury unanimity. In a state that has a jury unanimity requirement, not all do, then the jury has to agree. And in the states that don't require jury unanimity, they still require 10 or 9 to agree. So whatever number have to agree, they have to agree on that element. That's what makes it an element. And Cherami used it in exactly those terms. Cherami specified that in determining what the elements of the crime were, what the government has to prove to the jury, it was limiting its analysis to the elements of the two relevant offenses as set forth in the Arizona Criminal Code. So it is looking at the code to determine what are the elements of this offense. So we have an Arizona Supreme Court decision that tells us that this alternative is an element. And under Mathis, we need merely follow what the state court says. Regardless of whether you think Cherami is definitive, we think it is, a number of other published appellate court decisions have reached the same decision. Cheboye Inohosa from 1998 upheld the conviction for both transportation for sale and importation for the same action. That indicates that it believed these are two separate offenses. Brown told us that under the Dixon analysis, transportation and sale, quote, do not represent different ways of committing the same offense. And in Braun, 1995, the Arizona Court of Appeals said that transportation for sale and the last alternative, transfer, are in fact two offenses because they contain different elements. So we have the Arizona State Supreme Court telling us that transportation for sale is a distinct offense. And we have the published Court of Appeals decisions showing that transportation for sale has been treated as a separate crime from each of the other alternatives. In addition, as Judge Kendall's question suggested, the model jury instructions strongly support the same conclusion. Okay, but then we still have to go to the drug itself, right? All right. I mean, there would be no person that would be happier in the entire world if they got rid of the categorical and the modified categorical. But apparently, we still have to. We have to decide every step of the way. We must spend our time with it. And it seems to get to counterintuitive results. So when we get down to the drug itself, what's your best argument that it's not an alternative means of committing the same crime? We have a number of published cases that we've cited at pages 33 and 34 of our brief that hold specifically that in order to prove the crime, the government must identify the substance and prove that it falls within the definition of dangerous drug. We have cases that describe the specific drug as a, quote, element of the offense. We have a 1972 Supreme Court case, Aikens, that upheld convictions for both possession for sale of heroin and possession for sale of cocaine, both narcotic drugs, based on the same transaction. The cases that you cite, I think on this one, aren't as definitive as, arguably, Cherami or however we pronounce that. And we have this pending en banc case on the California statute, which is fairly similar. Should we wait to see what that says, or do you think it has any bearing on this? I think it potentially could have bearing in terms of the frame of reference for this map. Well, let's just say, hypothetically, and I can't tell you what the, it's not, I'm just using a hypothetical. If the case were to say that the different drugs are elements as opposed to alternative means, what effect, even though it's a different statute, what effect would it have on our analysis here? It would just be more support for the position that I think is clear from all of the information in front of this Court. Because all of these drug statutes are treated as divisible. If you look at the Rhode Island drug statute that we cite in connection with the Swaby case, the Pennsylvania statute in connection with the Henderson case. But in Arizona, is there, does the requirement of jury unanimity also apply to the type of drug that was used? Or does the jury just have to decide it was a quote-unquote dangerous drug, which means it's listed? I'm just asking a question. Yeah, no, no, I'm not. Why are you shaking your head? I just want to know what the practice is in Arizona. I was, sorry. Your body language is not very. My apologies, Your Honor. It's like saying, yes, yeah. I very much apologize, Your Honor. So I was anticipating the no answer. I haven't even finished my question and you're going like this. I don't know what value your no answer at the end will have. I'm going to have to look that up myself. I'm sorry, Your Honor. I'm watching the clock. So you asked. You have six minutes and 40 seconds. You could listen to the whole question. I very much apologize for betraying anything, Your Honor. I know I was simply anticipating where your question was going and trying to get to it. So I do apologize. Okay. The question is, in practice, do the Arizona courts require jury unanimity as to the type of drug or as the instruction seems to indicate, the one we have in the record, seems to indicate that it just requires unanimity that it was a dangerous drug, which is in turn a reference to the schedule, which lists some drugs that are not a controlled substance under the federal list and some drugs which are. We believe that the cases that we've cited require the identity of the drug, of the specific drug, to be proven for the reason that Judge Kendall's question suggested, which is that in order to prove the crime, you have to have. This is Judge Callahan. Yeah, that's Judge Callahan. I'm sorry. I will confirm I am. I don't mind you being confused with you at all about that. I mean, you've got three women up here after all. You know, you can't tell us apart. I'm just following this little list here that has it. Oh, sorry. I was going to ask you, like, the sign that says... Oh, come. I'll give you more time if you need it to answer the question. Well, our books weren't out here, so we weren't sure where to come. Oh. Okay. All right. Apologize for that one then. Okay, so... That's Judge Callahan's question suggesting that in order to prove the crime, the government has to put on expert evidence that the particular drug qualifies under the schedule. And this is exactly the reason that the Henderson case in the Third Circuit reached the same conclusion. It said that in order to prove possession of heroin, a jury would have to conclude that Henderson, in fact, possessed that specific drug which has been classified as a controlled substance in Schedule I or II. That particular controlled substance, then, is a distinct element of the crime. You couldn't have a jury be in disagreement about whether the particular drug that the prosecution had charged... So, Mr. Strand, you just confused me by citing a Third Circuit case. Tell me an Arizona case that... And the reason I'm confused, I'll go back to it again, is the jury instruction that we have says that you instruct the jury to find a dangerous drug. It doesn't... Unlike California, it doesn't have a blank where we put in the drug. What the jury instruction says is that the jury must find that the substance was, in fact, a dangerous drug. If I could cite to Castorina, which is one of the cases that our opponents rely on, there you had six drugs found in a single pill bottle. Three of them were narcotic drugs, three of them were dangerous drugs. The indictment charged six separate counts identified by specific drug, and the court upheld six separate convictions based on each of the separate drugs. It's a very strong indication that each drug is considered an element of a separate crime. In this case, we may not rely solely, however, on the Arizona case law. We also have the face of the statute. Mathis tells us that the face of the statute can be a very good indication of whether you have means or element. And here, the drug schedule, like all the other drug schedules, most of the other drug schedules across the country, provides an exhaustive list of each and every drug. And both Swaby and Henderson, following Mathis, found that that was a very good indication that each drug was the element of a separate crime. They weren't listed as illustrative examples. They were listed in an exhaustive list. In addition, in this case, the specific drug at issue, methamphetamine, is an apprendi element. And we know from Mathis that if a fact carries a higher penalty, then that is by definition an element. So this court need not decide whether the entire drug schedule is divisible. We know for sure that methamphetamine is an element of the offense. And lastly, one of you had asked my opponents about the waiver issue. And here, this argument was not presented to the BIA. Our position is that this court lacks jurisdiction. Well, it's a pure question of law. And, you know, we... I mean, I'm sure I can say that this reflects all of us. We want to get this pure question of law correct. Right? And it matters. It matters a lot for Arizona as well as for this particular case, this particular immigration case. It matters that we get the Arizona law correct on this. I completely agree, Your Honor. So I don't... I know... I realize that... I know under all the federal, you know, the federal guidelines that you would absolutely have to, in the indictment, plead the type of drug as a matter of apprendi. Absolutely have to do that. I don't know for sure if that's the case in Arizona. In Arizona, you... The question is whether you'd have to plead it. But in the indictment, the type of drug that was used. Yes, I know the answer to that question. Arizona does not require the inclusion of apprendi elements in the indictment, but it is sufficient notice if they're included in the indictment. And here, it was included in the indictment. Methamphetamine was specified. And the other source of information we have on both of these prongs, both as to actus reus and as to drug type divisibility, is the peek at the record. The Mathis court has instructed that if state law is unclear, the court has another place to look and should, in fact, look... I see my time is up. If I could... Go ahead. Finish.  because that can be as good an indication as state law as to what the elements of the crime were. And here, the record is conclusive in that from the indictment to the plea agreement to the actual judgment, each one, each step along the way, those documents specified one alternative to the exclusion of the others. Each one of those specified transportation for sale to the exclusion of any other possibilities, and each one of those specified methamphetamine to the exclusion of any others. You put all of that information together, we have the certainty that Taylor demands that this crime was, in fact, a generic illicit trafficking drug crime. And for all those reasons, and with my apologies for my facial expressions, Your Honor, we would ask that you dismiss, in part, and deny the petition. We'll accept that if you'll accept my apology for sitting in the wrong seat. I was just going to say the same thing, or for providing counsel the wrong name. Thank you very much, all of you. Your Honors, thank you for the additional one minute, and I have two points on rebuttal. The first is, when Shereme was used to phrase elements of transportation, it used it in the context of a lesser-included offense, under the Charging Documents Test, because it only considered one way of violating the statute, which was transportation for sale. But even if Shereme used elements of transportation in the same way that Seed v. Bratley did, then we still have one Arizona case who is also bound by Arizona Supreme Court, and who nonetheless was able to find a contradictory result. And so what happens is that Taylor's demand for certainty is not met. Furthermore, the Brown Court itself considered the case of State v. Brown, and found that that case was distinguishable, because a double jeopardy claim in that case was based on civil forfeiture, and forfeiture is not a criminal punishment for double jeopardy purposes. Thank you.
judges: Wardlaw, Callahan, Kendall